**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, : | Case No. 3:13-cr-175 |
| vs. : | Judge Michael R. Barrett |
| LANCE EALY, : | |
| Defendant. : | |

**ORDER:
(1) DENYING DEFENDANT'S MOTIONS TO SUPPRESS (Docs. 113, 120); AND
(2) DENYING DEFENDANT'S PRETRIAL MOTIONS (Doc. 115)**

This criminal case is before the Court on Defendant's motion to suppress evidence (Doc. 113), omnibus pretrial motion (Doc. 115), and supplemental motion to suppress (Doc. 120).  The Government filed a response to Defendant's motion to suppress.  (Doc. 122).  A hearing on Defendant's motions was held on October 27, 2014.  (Doc. 130).

**I.  BACKGROUND**

The Government filed a Criminal Complaint against Defendant Lance Ealy on October 28, 2013, alleging fraud and related activity in connection with access devices in violation of 18 U.S.C. § 1029(a)(3).  (Doc. 1).  Defendant was arrested on October 30, 2013, and without delay, was brought before Magistrate Judge Michael J. Newman for an initial appearance. (Docs. 6, 7).  Defendant informed Magistrate Judge Newman that he had retained Attorney Samuel Latham to represent him.  However, at that time, Magistrate Judge Newman appointed Assistant Federal Public Defender Thomas W. Anderson, who had appeared with Defendant that day. (Docs. 7, 9). Defendant was

detained by Magistrate Judge Newman pending the Detention Hearing set for November 4, 2013, at 1:30 P.M. in Courtroom 5 – Dayton, before Chief Magistrate Judge Sharon L. Ovington. (Doc. 7).

On November 4, 2013, Chief Magistrate Judge Ovington set an O/R Appearance Bond with Conditions of Release including that Defendant was prohibited from possession or using a computer at his residence unless he participated in the computer monitoring program through the U.S. Pretrial Services. (Doc. 11). The matter was also set for a Preliminary Examination Hearing to be conducted November 13, 2013, before Chief Magistrate Judge Ovington. (Doc.10). Subsequently, on November 13, 2013, Samuel Latham appeared with Defendant where he waived his Preliminary Examination Hearing. (Doc. 15). Thomas W. Anderson was terminated. (Doc. 13).

The Government filed an Indictment on November 26, 2013, consistent with the aforementioned Complaint, and the matter was assigned to District Judge Walter H. Rice. (Doc. 18). On December 9, 2013, Samuel Latham filed his Notice of Appearance as retained Counsel, and on December 10, 2013, Defendant, along with retained Counsel present, entered a not guilty plea. (Docs. 19, 20). On February 13, 2014, Judge Rice issued a Preliminary Pretrial Order setting a trial date and other dates. (Doc. 22).

Beginning on February 19, 2014, and continuing to March 17, 2014, Defendant filed a number of *pro se* Motions including a Motion to Terminate Attorney, Motion to Continue, Motion to Suppress, Motion for Discovery, Request for Bill of Particulars, Requests for Subpoena Ducas (sic) Tecum (Doc. 23); First Motion for Discovery (Doc. 25); Motion to Strike, Motion to Quash (Doc. 27); and a Motion to Continue (Doc. 28).

On March 10 and 17, 2014, Judge Rice conducted hearings to address the *pro se* motions filed by Defendant. (Docs. 26, 29). Subsequently on March 25, 2014, Judge Rice issued an Order of Recusal and the matter was reassigned to District Judge Michael R. Barrett. (Doc. 30).

Two days later, on March 27, 2014, the Court conducted a telephonic status conference with Counsel and determined that a motion hearing would be necessary to address the pending *pro se* Motion to Terminate Counsel. (Doc. 23). The hearing was scheduled for April 14, 2014. However, on April 10, 2014, the Government filed its First Superseding Indictment adding an additional 41 counts to include false, fictitious or fraudulent claims, wire fraud, aggravated identity theft, mail fraud, access device fraud all in violation of 18 U.S.C. §§ 1029(a)(3), 287, 1343, 1028A(a)(1), 1341, 1029(a)(2), (b)(1). (Doc. 35).

On April 13, 2014, the Government filed a Motion to Revoke Defendant's Bond. (Doc. 36). As scheduled, on April 14, 2014, the Court conducted a hearing related to Defendant's *pro se* Motion to Terminate Counsel (Doc. 23) and addressed the Government's newly filed Motion to Revoke Bond (Doc. 36). The Court conducted a thorough inquiry pursuant to *Faretta v. California,* 422 U.S. 806 (1975), at its April 14, 2014 hearing and concluded that Defendant was permitted to proceed *pro se* and that Attorney Samuel Lathem was permitted to act as "standby counsel." (Doc. 37). Accordingly, the Motion to Terminate Counsel (Doc. 23) was found to be moot, and a new trial schedule was issued by means of an ends of justice finding by the Court pursuant 18 U.S.C. § 3161(h)(7)(A) (Doc. 38). As a result of the same hearing conducted

3

April 14, 2014, rather than revoke bond, the Court modified Defendant's bond to include participation in the U.S. Pretrial Services location monitoring program and a curfew and deferred ruling on the merits of the Government's Motion to Revoke Bond (Doc. 36). (Docs. 55, 65).

On May 7, 2014, Defendant filed a *pro se* Motion to Appoint Counsel (Doc. 64) and the Government responded (Doc. 66) without objection. On May 15, 2014, a Court hearing related to the *pro se* Motion to Appoint Counsel (Doc. 64) was set for May 21, 2014. On the day of the hearing, Samuel Latham filed his Motion to Withdraw (Doc. 68) and Thomas Anderson, Assistant Federal Public Defender, was re-appointed to represent the Defendant (Doc. 69). As a result of that hearing, a further ends-of-justice Order pursuant to 18 U.S.C. § 3161(h)(7)(A) was issued setting a new trial schedule and addressing several of the *pro se* Motions filed by Defendant by terminating them subject to re-filing by newly appointed Counsel. (Doc. 71).

On July 9, 2014, the Court set a hearing regarding the Government's Motion to Revoke Bond (Doc. 38) to be conducted July 25, 2014. On July 24, 2014, Defendant filed a *pro se* Motion to Dismiss Bond Revication (sic), Motion to Terminate Court Appointed Counsel and Request for a *Marsden* Hearing due to Ineffective Assistance of Counsel for Failure to File Certain Documents (Doc. 74), which the Court orally denied at the July 25, 2014 hearing (Doc. 76).

On July 25, 2014, at the conclusion of an evidentiary hearing, the Court revoked Defendant's bond, having found by a preponderance of the evidence that Defendant continued to be linked to on-going criminal activity and further found, by clear and

4

convincing evidence, that Defendant continued to use a computer device to achieve internet access in violation of the conditions of his pretrial release. (Docs. 55, 76-77). Additionally, on September 11, 2014, the Government filed a Second Superseding Indictment to include four additional counts of aggravated identity theft and wire fraud, in violation of 18 U.S.C. §§ 1028A(a)(1) and 1343. (Doc. 88). On October 3, 2014, the Court orally reinstated Defendant's O/R Bond subject to specific conditions (Doc. 104), which was followed by a written Order on October 7, 2014 (Doc. 105).

Throughout these proceedings, Defendant has filed numerous *pro se* motions and requests to which the Court has been attentive. (Docs. 37, 69, 76, 81). During a hearing on August 26, 2014, the Court again conducted a *Faretta* inquiry wherein the Defendant acknowledged that he has never studied law but had represented himself in minor criminal actions. (Doc. 83, PageID# 551-52). He understood the nature of the charges levied against him, as well as the maximum possible statutory sentences, but admitted he did not have a full understanding of a potential Guideline calculation. (*Id*. at 552-54). Defendant was given a conservative estimate of his possible guideline range and informed that if he were to be found guilty of one or more of the aforementioned crimes, the sentences could be served consecutively. (*Id*. at 553-54). When asked if he is familiar with the Federal Rules of Evidence, Defendant responded, "Yes, very much." (*Id*. at 554). The Court further advised Defendant that a trained lawyer, in this case, Mr. Anderson, would be far more helpful then proceeding *pro se*. (*Id*. at 556). Defendant elected to proceed *pro se*. (*Id.*). The Government indicated it had provided a rough Guideline Calculation to Defendant (*Id*. at 553) and later indicated that it had tendered a

Plea Agreement (Doc. 108, PageID# 1484-85; Doc. 114, PageID# 1663-65) on September 11, 2014.  Defendant has orally repeated, on numerous occasions, his request that the Court relieve Mr. Anderson and appoint an out-of-district defense lawyer.  (Doc. 83, 114, 130).  The Court declined to appoint an out-of-district lawyer and advised Defendant that he could proceed with Mr. Anderson or *pro se* with Mr. Anderson as stand-by counsel.  (Doc. 83, PageID # 555; Doc. 130, PageID# 1768-69).

As stated above, Defendant requested the Court to appoint unidentified new counsel of his choice.  The Court declined but indicated if Defendant retained counsel the Court would revisit the schedule.  Defendant indicated he had been in contact with someone in Cleveland.  During a hearing on October 3, 2014, however, Defendant represented that he had been in contact with the unidentified counsel in Cleveland who indicated that he would not have enough time to prepare for trial, at which time Defendant confirmed to the Court that he still wished to proceed to trial as scheduled. (Doc. 108, PageID# 1483-84, 1491).

The Court first learned the identity of the Cleveland counsel, Craig Weintraub, on October 24, 2014 when Defendant requested to have him appointed as Defendant's counsel.  (Doc. 118).  On October 27, 2014, the Court held a hearing on pretrial motions and addressed Defendant's request to appoint new counsel.  (Docs. 124, 130).  Contrary to his prior statements regarding Mr. Weintraub's availability, Defendant now assured the Court that Mr. Weintraub had reviewed the criminal docket and was fully prepared to go to trial the following week, as scheduled and without further delay.  (Doc. 130). Defendant stated that the only hindrance was his inability to pay Mr. Weintraub's fees

and, therefore, Mr. Weintraub would only represent Defendant if the Court appointed him. (Doc. 118, 130). The Court reiterated that it would not appoint new counsel but that Defendant remained free to retain new counsel, to allow Mr. Anderson to represent him, or to represent himself. However, in an effort to be fully responsive to Defendant's request, the Court, with Defendant's permission, contacted Mr. Weintraub after the hearing on October 27, 2014. Mr. Weintraub indicated that until the previous week he had not heard from Defendant in months, that he could only participate if he was appointed, and that he would not be prepared to go to trial the following week and would require a continuance until approximately February 2015.

On October 20, 2014, Defendant filed a motion to suppress and request for a suppression hearing. (Doc. 113). Based on Defendant's allegations that the search warrant was invalid and the affidavit contained false information, this Court construed the motion as a request for a *Franks* hearing.[1] (*Id.*) On October 24, 2014, Defendant also filed a supplemental motion to suppress, which included allegations of prosecutorial misconduct. (Doc. 120).

On October 23, 2014, Defendant filed an omnibus pretrial motion, which included the following: (1) motion to deny silent witness rule; (2) notice to waive jury trial; (3) request for appointment of federal trial attorney; (4) motion to extend pretrial motions; (5) motion to extend discovery cut off; (6) request for trial transcripts of suppression hearing; (7) request for a bill of particulars; (8) request for true bill; (9) demand for grand

---

[1] *See Franks v. Delaware*, 438 U.S. 154 (1978)

jury transcripts; and (10) demand for in camera inspection of emails referenced in docket number 106. (Doc. 115).

## II. STANDARDS OF REVIEW

### A. Motions to Suppress

The Fourth Amendment requires probable cause for searches and seizures. U.S. Const. amend. IV. Probable cause is "defined as reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" *United States v. Padro*, 52 F.3d 120, 122-23 (6th Cir. 1995) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). In order "[t]o demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal quotations and citation omitted). When reviewing for sufficiency of the evidence supporting probable cause, a court may only look within the four corners of the affidavit. *Id.* In addition, a court should give great deference to a magistrate's determination of probable cause. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000); *see also United States v. Lawton*, 409 F.3d 744, 747 (6th Cir. 2005) ("The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed" (citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

An affidavit in support of a search warrant is presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). However, if "the supporting affidavit contains a statement, necessary to the finding of probable cause, that is later demonstrated to be

8

false and included by an affiant knowingly and intentionally, or with a reckless disregard for the truth," then the search warrant is invalid. *United States v. Duval*, 742 F.3d 246, 250 (6th Cir. 2014) (citing *Franks*, 438 U.S. at 155-56). A defendant is entitled to an evidentiary hearing to challenge the validity of the search warrant only if: (1) the defendant makes a "substantial preliminary showing" that the affiant made a false statement knowingly and intentionally, or with a reckless disregard for the truth; and (2) the alleged false statement was necessary to the finding of probable cause. *Id.*; *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001). To make a substantial preliminary showing, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 at 171. Accordingly, "there must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id*.

### B. Waiver of Jury Trial

The right of a criminal defendant to be tried before a jury is so fundamental to our criminal justice system that it is memorialized twice in the United States Constitution. U.S. Const. art. III, § 2, cl. 3 ("[t]he Trial of all Crimes, except in the Cases of Impeachment, shall be by Jury"); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury"). Jury trials "prevent oppression by the Government" by providing "an inestimable safeguard against [a] corrupt or overzealous prosecutor and against [a] compliant, biased, or eccentric judge." *Williams v. Florida*, 399 U.S. 78, 100 (1970) (citing *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968)). Accordingly, there is "a great societal interest in

having criminal trials conducted before juries." *United States v. Martin*, 704 F.2d 267, 271 (6th Cir. 1983).

A criminal defendant is permitted to waive a trial by jury if four requirements are met: (1) the defendant's waiver must be in writing; (2) the Government must consent to the waiver; (3) the Court must approve the waiver; and (4) the defendant's waiver must be voluntary, knowing, and intelligent. Fed. R. Crim. P. 23(a); *Martin*, 704 F.2d at 271. In order to approve a defendant's waiver, the Court "should evaluate both the mental ability of the defendant to make an intelligent decision and the defendant's awareness of the benefits and burdens of electing to forego trial by jury." *Id*. at 272; *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942) ("an accused should be permitted to forego [the] privileges [of a jury trial] when his competent judgment counsels him that his interests are safer in the keeping of the judge than of the jury") (emphasis added).

### C. Appointment of Trial Counsel

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence." U.S. Const. amend VI. Therefore, "in federal courts counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived." *Gideon v. Wainwright*, 372 U.S. 335, 340 (1963).

While a defendant who retains counsel has the right, within bounds, to counsel of his choice, the same does not apply to defendants who are appointed counsel. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). That is to say "the right to court-appointed counsel does not carry

with it the right to select a particular attorney … [t]he choice of court-appointed counsel is for the court and not for the defendant." *United States v. Davis*, 365 F.2d 251, 254 (6th Cir. 1966) (emphasis added).[2] Accordingly, an indigent defendant "must demonstrate good cause to warrant substitution of counsel." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). The District Court "must engage a defendant in person where he has expressed dissatisfaction with counsel and has sought to have him removed," to determine whether good cause exists. *Id*.

### III. ANALYSIS

**A. Defendant's Motion to Suppress (Docs. 113)**

In his motion to suppress, Defendant argues that the search warrant was issued based upon false statements intentionally included in the affidavit. (Doc. 113). Defendant alleges suppression is appropriate and requests a *Franks* hearing because: (1) the affidavit contained false information regarding the duration of Defendant's involvement in the criminal activity; (2) the affidavit contains inconsistent statements from witness Anshawn Esmond; and (3) the search warrant was obtained using false information from two additional witnesses, Brittnie and Ashlie Mansfield.[3] (*Id*.) The Court will address each of the alleged false statements in turn.

---

[2] *United States v. Gallop*, 838 F.2d 105, 108 (4th Cir. 1988) ("[a]n indigent defendant … has no right to have a particular lawyer represent him"); *United States v. Allen*, 789 F.2d 90, 92 (1st Cir. 1986) ("[a]s an indigent defendant, appellant … did not have a right to have a particular lawyer represent him"); *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973) ("whether to appoint a different lawyer for an indigent criminal defendant who expresses dissatisfaction with his court-appointed counsel is a matter committed to the sound discretion of the district court").

[3] Defendant's motion to suppress identifies seven "reason[s] to suppress evidence." (Doc. 113). However, most of the "reasons" are not distinct issues, but instead, comprise one argument

### *1. Statements Regarding the Duration of Defendant's Involvement[4]*

First, Defendant claims that Special Agent Brad Bierman intentionally included "false and tainted information" regarding Defendant's communication with Ngo in order to obtain the January 2014 search warrant. (Doc. 113, PageID # 1559). Specifically, Defendant claims that S.A. Bierman's representations that Defendant "had been in contact with NGO aka WANGSANGPI@GMAIL.COM from 2009-2012 and that [he] had communicated electronically with an illicit vendor of personally identifiable information," were false. (*Id.*) Defendant alleges that these statements were false because "NGO confirmed that he did not recognize [Defendant's] emails during held (sic) on 8-12-2014." (*Id.* at 1660). Defendant's attached exhibits highlight S.A. Bierman's alleged false statement in the affidavit and a separate, allegedly inconsistent statement made by S.A. Bierman to the Grand Jury. (*Id.* at 1565, 1567).

As an initial matter, the statement by S.A. Bierman regarding Defendant's electronic communications spanning from 2009 to 2012 was actually a <u>summary</u> of the information contained in the <u>criminal complaint affidavit</u> (Doc. 1) prepared by Special Agent Mary Turk. (Doc. 113, PageID # 1565). The Court notes that the summary misstates the dates of communication attributed to Defendant in the Complaint affidavit. (*Compare* Doc. 113, PageID # 1565 at ¶ 10(a), *with* Doc. 1 at ¶¶ 8-9). However, this error was ultimately harmless as a true and correct copy of the Complaint affidavit was

---

erroneously divided into separate sections. The Court has combined like arguments in this Order and will address each in discussing the alleged false statements to which it corresponds.

[4] Defendant's first "reason to suppress evidence." (Doc. 113, PageID # 1559-60).

12

attached to the summary, thereby providing the correct information. Further, the fact that S.A. Bierman included a copy of the Complaint affidavit to his own summary demonstrates that any mistake on his part was unintentional. Additionally, even if the Court were to excise the incorrect dates, the affidavit still contains sufficient information regarding Defendant's alleged conduct to support a finding of probable cause. Accordingly, S.A. Bierman's misstatement is neither sufficient to invalidate the warrant, nor to necessitate an evidentiary hearing.

Defendant also includes a portion of S.A. Bierman's Grand Jury testimony and alleges it is inconsistent with the information provided in the search warrant affidavit. (Doc. 113, PageID # 1567-68). However, the Court does not agree that these statements are inconsistent. In his testimony, S.A. Bierman states: "[t]he e-mails I reviewed began in January 2013 and continued, I believe, all the way through July of 2013, perhaps even later." (*Id.*) (Emphasis added). As previously noted, the "2009 to 2012" dates referenced in the search warrant affidavit are summarized from the Complaint affidavit prepared by S.A. Mary Turk. (*Id.* at 1). At no point does S.A. Bierman state in his search warrant affidavit that he personally reviewed emails during any period of time inconsistent with his Grand Jury testimony. Accordingly, S.A. Bierman's Grand Jury testimony is not inconsistent with the affidavit and does not evidence an intentional misrepresentation to obtain the search warrant. Further, as previously noted, the erroneous statement was not relevant to the probable cause finding. Therefore, an evidentiary hearing is not warranted.

## 2. *Statements of Anshawn Esmond*[5]

Next, Defendant argues that the search warrant contained false and inconsistent statements made by Anshawn Esmond to federal agents regarding the origins of a $600.00 check. (Doc. 113, PageID # 1560, 1563).

On December 23, 2014, Special Agents Robert Mullins and Thomas Buchenroth interviewed Mr. Esmond. (Doc. 113, PageID # 1571). During this interview, Mr. Esmond told the agents that he received a $600.00 check in the mail and, despite not knowing who had sent it, he chose to cash the check as "he needed the money because he had a baby on the way." (*Id.*) On January 15, 2014, Assistant United States Attorney Alex Sistla, S.A. Bierman, and S.A. Turk interviewed Mr. Esmond. (*Id.* at 1572). During the January 15 interview, Mr. Esmond initially stated that he did not know the origins of the $600.00 check. (*Id.*) However, Mr. Esmond later admitted that he had actually received the check from Defendant and had given him all of the money after cashing it, although Defendant did occasionally purchase items for Mr. Esmond's baby. (*Id.*)

The alleged inconsistency in Mr. Esmond's statements between the two interviews does not invalidate the search warrant. First, the information S.A. Bierman provides in the affidavit is consistent with what Mr. Esmond stated during the January 15 interview. (Aff. ¶¶ 18(b) – (d)). The fact that Mr. Esmond may not have been entirely forthcoming initially does not mean that his ultimate disclosures were false, nor does it justify

---

[5] Defendant's second, third, and seventh "reason(s) to suppress evidence." (Doc. 113, PageID # 1560, 1563).

disregarding all of his proffered information. Further, even without Mr. Esmond's testimony regarding the check, the affidavit contains sufficient information tying Defendant to the bank accounts (*e.g.*, ATM surveillance photographs) to support a finding probable cause. (*Id*. at ¶ 16(d)(i)).

Accordingly, Defendant fails to make a "substantial preliminary showing" that Mr. Esmond's proffered information were false, that S.A. Bierman included the information knowing it was false or with reckless disregard for the truth, or that its inclusion affected the probable cause determination.

### 3. *Statements of Ashlie and Brittnie Mansfield*[6]

Defendant alleges that suppression is appropriate because "Britney (sic) and Ashlie Mansfield both admit under oath to fining (sic) a false lease that was later used by prosecuting attorney Alex Sistla used to obtain the bogus search warrant on January 28, 2014." (Doc. 113, PageID # 1562). Additionally, Defendant asserts that Brittnie and Ashlie Mansfield provided false information regarding his involvement in other activities related to credit cards. (*Id*.)

Defendant's argument fails because none of the alleged false information was included in the affidavit. As such, it could not have been the basis for obtaining the warrant. Indeed, the official interview memoranda, which Defendant provides in support of his motion, show that federal agents interviewed Ashlie and Brittnie Mansfield between February 7, 2014 and April 1, 2014, which was <u>after</u> the search warrants were

---

[6] Defendant's fourth, fifth, and sixth "reason(s) to suppress evidence." (Doc. 113, PageID # 1562)

15

obtained. (Doc. 113, PageID # 1582-86). Accordingly, even if the information was false, it was not contained in the affidavit and was not used to obtain the search warrant. Therefore, the statements do not warrant suppression or an evidentiary hearing.

### B. Defendant's Supplemental Motion to Suppress (Doc. 120)

Defendant's supplemental motion to suppress raises an additional ground for suppression based on prosecutorial misconduct. (Doc. 120). Specifically, Defendant contends that the Government "conspired to suppress evidence favorable to him," by failing to disclose to the Grand Jury that witnesses Ashlie Mansfield and Anshawn Esmond had lied during their testimony. (*Id*. at PageID # 1728-29)

In short, Defendant's allegations are entirely unfounded. Defendant provides no evidence to support his assertions, nor does he identify any specific statements that he alleges to be false. Further, Defendant's cited cases fail to support (and at times actually undercut) his own argument.

Accordingly, Defendant's motion to suppress based on alleged prosecutorial misconduct is denied.

### C. Defendant's Omnibus Pretrial Motion (Doc. 115)

#### *1. Motion to Deny Silent Witness Rule and Waive Jury Trial*

Defendant states that he "waives his right to a full jury trial due to the silent witness rule." (Doc. 115, PageID # 1689). During the October 27, 2014 hearing, the Court attempted to explain to Defendant that there was no correlation between the "silent witness rule" and a jury trial in the instant case. (Doc. 130, PageID # 1776). The

16

Government further confirmed that the "silent witness rule" was inapplicable to the prosecution in the instant case. (*Id*.)

Based upon Defendant's stated reasons for his request to waive a jury trial, the Court finds that the waiver is not knowingly and intelligently made. Accordingly, the Court does not approve the waiver and Defendant's request is denied.

### 2. *Request for Appointment of Counsel*

Once again, Defendant requests the appointment of new counsel. (Doc. 115). Early in these proceedings, the Court took the unusual step of substituting Defendant's court-appointed public defender by appointing Defendant's counsel of choice. (Doc. 13). Later, at the request of Defendant and his attorney, the Court once again substituted defense counsel and re-appointed the Assistant Federal Public Defender, Thomas Anderson. (Docs. 23, 68). Defendant now requests that the Court appoint yet another attorney of his choosing, Cleveland criminal defense attorney Craig Weintraub. (Doc. 121). The Court is neither required, nor inclined to do so.

The record is replete with Defendant's repeated and baseless accusations of malpractice against both of his attorneys. (Docs. 23, 64, 74, 79, 97, 130). However, based on Defendant's conduct throughout these proceedings and the Court's observations of defense counsel, it is evident that these allegations are disingenuous and are merely an attempt to frustrate the Court into appointing Defendant's counsel of choice. Having impliedly waived his right to an attorney by refusing Mr. Anderson's assistance, Defendant is proceeding to trial *pro se*, with Mr. Anderson as stand-by counsel. Mr. Anderson remains available to step in as counsel at any point throughout the trial.

17

However, Defendant has failed to show good cause why substitution of counsel is appropriate. Therefore, the Court denies his request.

### 3. *Motions to Extend Pretrial Deadlines*

Defendant moves for an extension of the pretrial motion deadline and the discovery cut-off. (Doc. 115). As these requests are made on the eve of trial, Defendant's request would consequently require a continuance of the trial as well. Defendant argues that the continuance is appropriate, as the Government allegedly failed to provide him with discovery until September 10, 2014. (Doc. 130, PageID # 1774).

First, Defendant's omnibus motion was filed on October 23, 2014. (Doc. 115). Accordingly, even if Defendant had received discovery for the first time on September 10, 2014, he had over six weeks to review the evidence. However, Defendant's assertion that he received discovery for the first time on September 10, 2014 is not entirely accurate. (Doc. 130, PageID # 1778-79). Electronic copies of nearly all discovery was made available to Defendant prior to September 10, 2014. (*Id*.) The Government estimated that they had provided Defendant with 99.5% of the discovery several weeks before the October 27, 2014 hearing. (*Id*. At 1778). Further, Defendant's appointed stand-by counsel was in possession of hard-copies of the discovery. The September 10, 2014 date referenced was the date that the Government provided paper copies of the discovery to Defendant. (*Id*.)

Additionally, the pretrial motion deadline expired on October 13, 2014. (Doc. 105). Although the Court has entertained numerous motions by Defendant long after the

18

deadline expired, the Court will not further delay proceedings by granting Defendant's request for a continuance at the eleventh hour.

### 4. Miscellaneous Requests

Defendant further requests Grand Jury transcripts, a Bill of Particulars, and *in camera* inspection of emails that the Government intends to introduce as evidence at trial. (Doc. 115). The Court heard arguments as to the necessity of Defendant's requests.

With regard to the Grand Jury transcripts, Defendant requests transcripts of individuals who either did not testify before the Grand Jury, who will not testify at trial, or transcripts that qualify as *Jencks* material[7] and will be provided at the appropriate time. (Doc. 130, PageID # 1780). Therefore, further disclosure of the Grand Jury transcripts is not proper at this time.

As to the Bill of Particulars, Defendant's stand-by counsel, Thomas Anderson, represented that he had met with the Government on numerous occasions, had asked specific questions about the counts contained in the indictment, and understood the nature of the allegations against the Defendant. (Doc. 130, PageID # 1780). Accordingly, a Bill of Particulars is unnecessary.

Finally, with regard to Defendant's request for *in camera* inspection of emails, the Government filed copies of the emails redacted only with regard to personally identifying information. (Doc. 130, PageID # 1783). The Government also provided un-redacted copies of the emails to Mr. Anderson, which Defendant was free to review. (*Id*.) The only restriction placed on the emails was that Defendant was not permitted to take home

---

[7] *See Jencks v. United States*, 353 U.S. 657 (1957).

un-redacted copies. (*Id*.) Accordingly, Defendant had more than sufficient access to both redacted and un-redacted copies of the emails and in camera review is unnecessary.

## IV. CONCLUSION

Based upon the foregoing, Defendant's motion to suppress evidence (Doc. 113), supplemental motion to suppress (Doc. 120), and omnibus pretrial motion (Doc. 115) is **DENIED.**

**IT IS SO ORDERED**.

Date: 11/03/2014  *s/ Michael R. Barrett*
Michael R. Barrett
United States District Judge