**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

LANCE EALY,

        Defendant.

CASE NO.  3:13cr175

Judge Michael R. Barrett

## **OPINION AND ORDER**

This matter came on for consideration of various *pro se* motions filed by Defendant, which include (1) a *pro se* Rule 29 Motion for Judgment of Acquittal, Rule 34 Motion to Arrest Judgment, Rule 33 Motion for New Trial (Doc. 173), the Government's response (Doc. 187), and Defendant's *pro se* Reply (Doc. 188); (2) a *pro se* Motion to Recuse Judge pursuant to 28 U.S.C. § 455a, Rule 33 Motion to Order a New Trial, Rule 12 Motion for Pleadings, Rule 47 Motion and Supporting Affidavits, Rule 34 Second Motion to Arrest Judgment, Rule 44 Pleading Right to and Appointment of Counsel (Doc. 175), the Government's response (Doc. 187), and Defendant's *pro se* reply (Doc. 188); (3) Defendant's *pro se* Post Conviction Motion (Doc. 199);  (4) Defendant's *pro se* Motion for the Government to Produce Ashlie Mansfield Grand Jury Transcript which commenced on 2/27/2014 (Doc. 200); (4) Defendant's *pro se* Supplemental Motion (Doc. 201); and (5) Defendant's *pro se* Supplemental Rule 33 Motion for New Trial (Doc. 202).  Also under consideration is Defendant's *pro se* Notice (Doc. 203).  The undersigned conducted a hearing on June 30, 2015, and the Government and Defendant both were given an opportunity to submit further briefings post-hearing.  On

July 17, 2015, the Government filed its response to Defendant's motions at Documents 199, 200, 201, and 202.  (Doc. 207).  After receiving extensions of time, Defendant filed his *pro se* reply to the Government's response at Document 207 on August 12, 2015.  (Doc. 212).  Defendant also filed a *pro se* Amended Request for Additional Time to File Response/Reply as to Document 207 (Doc. 213), which is moot because his reply was filed timely.  These matters are now ripe for review.

I.      BACKGROUND

Defendant's arguments in the various *pro se* filings are rambling and repeat many issues raised in pretrial motions upon which the Court has previously ruled.  Although much of the following is contained in the Court's previous Orders, a walk-through of the history of this case will put the current issues in perspective.

By way of background, throughout the proceedings Defendant filed numerous *pro se* motions, both while proceeding *pro se* and while represented by counsel. On February 19, 2014 and February 21, 2014, respectively, Defendant filed two *pro se* motions seeking to terminate his attorney, continue the case, suppress evidence, obtain discovery, request a bill of particulars, and request subpoenas duces tecum.  (Docs. 23, 24).  At the time of filing, the case was before the Honorable Walter H. Rice who struck Document 24 as duplicative by notation order dated February 24, 2014.

On March 4, 2014, Defendant filed a *pro se* Motion to Strike and Motion to Quash.  (Doc. 27). That filing was stricken by Judge Rice by notation order on March 17, 2014 because Defendant was represented by counsel.  It should be noted that those motions (Doc. 27), including Defendant's Motion to Dismiss, were improperly

submitted in this criminal case pursuant to what Defendant identified as Federal Rule of Civil Procedure 12(4)(f).

On March 17, 2014, Defendant's counsel, Sam Latham, filed a Motion to Continue. (Doc. 28). Judge Rice granted the motion by notation order on March 18, 2014.

Shortly thereafter, the case was reassigned to the undersigned who held a hearing on Defendant's previously filed *pro se* motion to terminate counsel on April 14, 2014. (Doc. 23). Thereafter, the Court journalized conducting a *Faretta* hearing and granted Defendant's request to proceed *pro se* and continue the trial with Attorney Sam Latham serving as stand-by counsel. (Docs. 38, 39). Therefore, the Court's Order (Doc. 39) rendered moot Defendant's *pro se* Motion to Terminate Attorney and Motion to Continue (Doc. 23). The Court's Order also granted in part and denied in part Defendant's *pro se* Motion for Discovery (Doc. 25) with Defendant's request for the witness list being denied. At that time it was indicated that the Government offered to provide Defendant a reverse proffer in lieu of a Bill of Particulars. Defendant's request for subpoenas was denied. (Doc. 39).

On April 17, 2014, Defendant filed a *pro se* Amended Motion for Bill of Particulars (Doc. 40), a *pro se* Motion for Early Disclosure of *Brady*, *Giglio*, and *Jencks* materials (Doc. 41), and a *pro se* Motion for all grand jury testimony (Doc. 43). This was followed by Defendant's April 25, 2014 *pro se* Motion to Strike or Withdraw his Amended Motion for a Bill of Particulars (Doc. 40) pending the reverse proffer with the Government. (Doc. 53). That same day, Defendant filed a *pro se* motion for affidavits (Doc. 54), which was mooted by the Government's response wherein it agreed to provide the

affidavits for email accounts (Doc. 56).  On April 28, 2014, the Government responded to the *pro se* Motion to Strike or Withdraw his Amended Motion for a Bill of Particulars (Doc. 53), indicating that a reverse proffer had been offered and that, while not inclined to entertain a second reverse proffer session, it would leave the issue open.  (Doc. 57).

On May 7, 2014, Defendant filed a *pro se* request for a Designation of Complex Case (Doc. 63) to which the Government agreed (Doc. 67).  Defendant also filed a *pro se* Motion to Withdraw his *pro se* status in which he requested that the Court appoint counsel.  (Doc. 64).  It is noted that in this pleading Defendant agrees there was a prior *Faretta* hearing on April 14, 2014 and he acknowledges his prior request to proceed *pro se* with Sam Latham as stand-by counsel.  The Government responded (Doc. 66) that it had no objection to appointment of new counsel but did not agree to appointment of "special counsel" of Defendant's choosing.  *United States v. Webster*, 84 F.3d 1056, 1062-63 (8th Cir. 1996).  Shortly thereafter, Attorney Sam Latham requested to withdraw from the case.  (Doc. 68).  In the Court's May 23, 2014 Order, it permitted Sam Latham to withdraw as counsel and appointed new counsel, Assistant Federal Public Defender Thomas Anderson, Esq.  (Doc. 71).  The Order also terminated the previously filed pending *pro se* motions (Docs. 40, 41, 43, 51, 52, 53, 63), subject to review and potential refiling by new counsel.  (Doc. 71).

On July 24, 2014, Defendant resumed filing *pro se* motions despite being represented by counsel at the time.  (*See* Docs. 73, 74).  In Document 75, Defendant made a *pro se* request for leave of the Court to permit his father, a non-lawyer, to assist as co-counsel, which the Court denied on October 16, 2014 (Doc. 114, PageId 1656-

Page **4** of **18**

57). *United States v. Wheat*, 486 U.S. 153, 159-60 (1988); *United States v. Kelley*, 539 F.2d 1199, 1202-03 (9th Cir. 1976).

On August 25, 2014, Defendant filed a *pro se* Motion for Miscellaneous Relief, which included asking the Chief Judge to review the trial court. (Doc. 80). After holding an on-the-record, in-person status conference, the Court denied the Motion for Miscellaneous Relief. (Doc. 82). In that August 28, 2014 Order, the Court also journalized conducting a second *Faretta* hearing during the August 26, 2014 status conference wherein Defendant elected, once again, to proceed *pro se*, this time with Tom Anderson as stand-by counsel. (Doc. 82; *see also* Doc. 83). That Order again satisfied all outstanding motions and the docket up to that point in time.

On September 5, 2014, Defendant filed a *pro se* motion seeking to disqualify the Judge. (Doc. 84). The Court denied that motion on September 15, 2014. (Doc. 93). In its Order, the Court also tabled the bench verses jury trial issue (Doc. 93), which was later decided on September 25, 2014 (*see generally* Doc. 101; *see also* Doc. 136, PageId 2016).

The Court's Order of October 17, 2014 clarified again for the record that Document 27 previously had been stricken by the Honorable W. Rice and issues regarding the witness list (Doc. 73) were granted in part and denied in part. (Doc. 111).

On October 20, 2014, Defendant filed a *pro se* Motion to Suppress, Motion for Discovery, Motion for Bill of Particulars, Motion for Subpoena Duces Tecum (Doc. 113) and on October 23, 2014 filed a *pro se* Motion to Deny Silent Witness Rule, Notice to Waive Jury Trial, Request for Appointment of Federal Trial Attorney, Motion to Extend Pretrial Motions, Motion to Extend Discovery Cut Off, Request for Trial Transcripts of

Suppression Hearing, Request for the Bill of Particulars, Request for True Bill, Demand for Grand Jury Transcripts, and Demand for In Camera Inspection of Emails in Docket (Doc. 115).  He followed those filings with a *pro se* Notice of Appointment of Counsel requesting the Court appoint as counsel Defendant's father, a non-lawyer, as well as Craig Weintrub of Cleveland, Ohio (Doc. 118), and a Notice of Appointment of Counsel of his choosing in which he requests the Court to pay the fees and costs for representation by Mr. Weintrub (Doc. 121).   Defendant also contemporaneously filed a a *pro se* Supplemental Motion to Suppress.  (Doc. 120).  The Government filed a response to the motion to suppress, addressing the requested *Franks* inquiry as well as other issues raised by Defendant.  (Doc. 122).

In its October 29, 2014 Order, the Court reiterated that no new counsel would be appointed to represent Defendant.  (Docs. 129). Throughout various conversations regarding the counsel issue, the Court continuously reminded Defendant that if he wished to retain counsel he could do so and upon that retained counsel's entry of appearance, the trial calendar would be revisited.  (*See* Docs. 129).  For example, during the October 16, 2014 omnibus hearing, Defendant mentioned that he was in contact with a new attorney named Dan O'Brien who would represent him (Doc. 114, PageId 1660-61), even though on October 3, 2014 Defendant informed the Court that a separate unidentified counsel from Cleveland could not be ready in time and insisted that he wanted to keep the trial date and would not waive any speedy trial issues (Doc. 108, PageId 1483-84).  In response, the Court informed Defendant that despite prior conversations about retained counsel from Cleveland there had been no appearances

by new counsel in the case and that any new counsel would have to make an appearance before any further action would be taken. (Doc. 114, PageId 1660-61).

From the outset of this case, at various times, Defendant expressed a generalized dissatisfaction with his counsel and ways to proceed in this case. As documented above, Defendant was permitted to proceed *pro se* with appointed counsel in a stand-by capacity on more than one occasion. The Court repeatedly discussed with Defendant that the right to counsel did not guarantee him representation by an attorney of his choice. He does not have a "right to have particular attorney represent him." *United States v. Iles* 906 F.2d 1122, 1130 (6th Cir. 1990); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) (observing that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."); *United States v. Gulley,* 60 F. App'x 538, 542-43 (6th Cir. 2003) (stating that "there is no right to have appointed counsel of one's choice"). The record is replete with instances where Defendant ignored these rulings. This Court noted that Defendant's repeated accusations of malpractice against both of his attorneys were baseless. Finally, at the eleventh hour, Defendant indicated that Craig Weintraub, an attorney in Cleveland, could represent him. Defendant then made false assertions about Mr. Weintraub's availability and preparedness for trial. After receiving permission to contact Mr. Weintraub directly, the Court telephoned Cleveland counsel and found Defendant's assertions to be false in several respects. (*See* Doc. 133, PageId 1975-76).

The Court's Order of November 3, 2014 (Doc. 133) contains a detailed history of the filings to that date in the case and provides a detailed summary of most of the foregoing issues. This Order, in addition to providing a history of the events and

accounts leading up to the trial itself, disposed of Defendant's remaining pretrial motions (Docs. 113, 115, 120).

On November 17, 2014, during the trial, Defendant absconded from the jurisdiction and Mr. Anderson became trial counsel. At the conclusion of the trial, Mr. Anderson was relieved of his duties. Thereafter, the Court appointed James P. Fleischer (Doc. 177) to represent Defendant for post-conviction and sentencing proceedings.

At the time of filing of the aforementioned Documents 173, 175 and 188, Defendant was a fugitive from justice. Since the time of his apprehension, Defendant continued to file *pro se* motions, including a post-conviction motion (Doc. 199), a request for Grand Jury transcripts (Doc. 200), a Supplemental Motion to Dismiss the Indictment (Doc. 201), a Supplemental Motion for New Trial (Doc. 202), and a Notice to the Court of Victim's Statement (Doc. 203).

## II.  ANALYSIS

In the record of filings, Defendant's complaints can be grouped into several broad categories:  (1) a request for post-conviction relief; (2) a request to disqualify the trial court; (3) his claim of denial of competent counsel; (4) his claim of vindictive prosecution and insufficiency of the evidence; (5) his claim he waived a jury trial; (6) his ongoing request for grand jury transcripts and his request to dismiss the indictment based upon his allegations of perjured grand jury testimony by several of his acquaintances; and (7) his assertion that necessary pretrial motions had not been decided prior to trial.[1]  These issues are addressed below.

---

[1] While the issues raised in Documents 173, 175, and 188 could be subject to the fugitive disentitlement doctrine because they were filed while Defendant was a fugitive, *see In re Prevot*, 59 F.3d 556, 562 (6th Cir. 1995); *see also*

### A. First Issue

Defendant's Post-Conviction Motion under 28 U.S.C. § 2255 filed on June 12, 2015 (Doc. 199) is premature for several reasons. First, Defendant has not yet been sentenced. *See United States v. Boyd*, No. 06-cv-13516, 2006 U.S. Dist. LEXIS 62044 (E.D. Mich. Aug. 31, 2006) (dismissing § 2255 motion without prejudice when filed before sentencing). Second, Defendant has indicated, at times, his intent to appeal his convictions, his sentence, and/or various rulings made by this Court (*see* Doc. 206), and the Court finds no extraordinary circumstances exist that would make consideration of the requested post-conviction relief under § 2255 necessary before the resolution of any direct appeal. *See Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998). Accordingly, the Post-Conviction Motion under 28 U.S.C. § 2255 will be dismissed without prejudice.

### B. Second Issue

As to the disqualification of the undersigned, the matter seems to have centered on Defendant's choice of trial counsel. As stated above, the Court discussed with the Defendant on numerous occasions the status of his counsel and what was and was not permitted. (*See, e.g.*, Docs. 58, 78, 79, 83, 99, 108, 114, 130, 136). The undersigned also has previously overruled pretrial requests from Defendant to recuse himself in this case. (Docs. 82, 93, 99). Accordingly, the Court finds the disqualification and/or judicial bias arguments to lack merit and therefore overrules those arguments.

### C. Third Issue

---

*United States v. Lanier*, 123 F.3d 945, 946 (6th Cir. 1997); *United States v. Yang*, 144 F. App'x 521, 522 (6th Cir. 2005), the Court nevertheless will address the issues raised and notes that those issues have substantial overlap with those raised in subsequently filed motions.

As to the alleged denial of competent counsel, Mr. Anderson, a Federal Public Defender, participated as counsel or stand-by counsel after Mr. Latham's withdrawal through the conclusion of the trial. During trial, Mr. Anderson performed the lion's share of *voir dire* as well as the examination of key witnesses at Defendant's request. Much of Defendant's difficulties with counsel seem to be regarding discovery disputes. At various times the Government had indicated it had complied with its duty to provide discovery materials to Defendant's prior counsel, Mr. Latham, and, again, to Mr. Anderson. (*See, e.g.*, Docs. 58, 79, 83, 99, 108). It is clear from the record that Defendant refused, on multiple occasions, to review the documents provided by the Government, and declined the Government's additional offer to provide Defendant with a "reverse proffer" of the information it intended to use against him. (*See, e.g.*, Docs. 58, 83). At various times Defendant raised the issue of witnesses and potential experts, and during the October 16, 2014 hearing, an *in camera* discussion was held, so as not to reveal his trial strategy, wherein Defendant outlined his request for the CEO of Experian, a representative of Liberty Reserve, the CEO of Info Search, and a witness from Court Ventures. (*See* Doc. 114). There also was a discussion of other witnesses who already were scheduled to appear at trial. (*See id.*). After a detailed discussion with Defendant, the Court informed Defendant which witnesses would be available and which ones he would not be permitted to subpoena. (*See id.*). The Final Pretrial Conference was conducted on October 3, 2014, and in a sealed portion of that conversation, Defendant indicated that he did not need an expert witness. (*See* Doc. 108).

To the extent Defendant also argues that he himself was not competent, the Court notes its prior Opinion and Order in which it detailed the Court's *Faretta* inquiries and its responsiveness to Defendant's requests for counsel and requests to proceed *pro se*. (*See* Doc. 133). The Court would not have permitted Defendant's *pro se* status if there had been an issue concerning his competency to stand trial. Further, the record reflects that Defendant participated in the *voir dire* process, in numerous sidebar discussions, in numerous examinations and in exercising challenges and objections. He also filed numerous motions and other pleadings throughout the course of this case.

Accordingly, the Court concludes that Defendant himself was competent and he was not denied competent counsel, and his arguments on this issue are overruled.

### D. Fourth Issue

Contrary to Defendant's arguments, there is no evidence of vindictive prosecution in this matter. "In order to succeed on a claim of vindictive prosecution, a defendant must demonstrate 'actual vindictiveness, by producing objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights,' or alternatively, 'a realistic likelihood of vindictiveness[.]'" *United States v. Goff*, 400 F. App'x 1, 23 (6th Cir. 2010) (quoting *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003)) (additional internal quotations omitted). "To prevail on a claim via this second approach, a defendant must demonstrate: '(1) [the] exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; [and] (4) the intent to punish the defendant for exercise of the protected right.'" *Goff*, 400 F. App'x at 23 (quoting *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001)).

During the course of the trial, which began on October 28, 2014, Defendant was continually late for trial and, at times, disruptive, and on November 17, 2014, after the presentation of video evidence clearly depicting Defendant conducting illegal transactions with financial institutions, Defendant voluntarily absented himself from the trial. On November 19, 2014, the jury convicted Defendant on the forty-six counts set forth in the Second Superseding Indictment. (Doc. 165). The record is replete with overwhelming evidence that supports Defendant's convictions on each of these charges. The First Count charged Defendant with the possession of illegally obtained American Express account information for fifteen individuals, which information was obtained by the United States through the means of an agent posing as one of Defendant's contacts. At trial, these individuals testified that Defendant did not have permission to use their credit card information and that numerous items charged to their accounts were not purchased by the actual account holders. Counts two through forty-two outlined a tax refund scheme wherein Defendant opened various accounts using the purloined and personal identifier information of taxpayers. The scheme, as demonstrated at trial, involved the electronic submission of fraudulent tax returns to the IRS and the organization of fictitious bank accounts into which improper tax refunds were deposited. Electronic surveillance confirmed Defendant and others were accessing the various fraudulent accounts to obtain funds. Counts forty-three and forty-four charged him with using the personal identifying information of an individual to open up bank accounts in her name for fraudulent purposes. Counts forty-five and forty-six charged Defendant with utilizing yet another individual's personal identifying information and credit card number to illegally secure merchandise from a vendor.

The Court will not review the entirety of the evidence at this time but overwhelming evidence supports the jury's determination of conviction beyond a reasonable doubt.  The evidence included the email trails left by the Defendant in the various accounts he used and operated.  Much of this testimony was confirmed by documentation obtained from his residence, pursuant to a search warrant; all of which when coupled with the video surveillance demonstrated Defendant himself as well as various cohorts used the above described information to illegally obtain funds from the fraudulently opened accounts.  This evidence supports the jury's determination, as well as the reasonableness of the decision to prosecute Defendant on those grounds.  After trial, the Court polled the jury, confirming its unanimous verdict.[2]  The Government, in its response to two of Defendant's *pro se* motions (Doc. 187), sets forth in meticulous detail the various allegations and evidence produced in support of those charges against Defendant.  This evidence is accurately and adequately set forth from pages 4 through 22 in the Government's brief (Doc. 187) and need not be repeated here.  In sum, Defendant's convictions in this case are not against the manifest weight of the evidence and, in fact, are supported by overwhelming evidence adduced at trial.

To the extent that Defendant is arguing that the Government initially prosecuted Defendant or thereafter obtained the Superseding Indictment because Defendant chose to invoke his Fifth Amendment right, he does not indicate when there was a situation prior to the initial prosecution or Superseding Indictment to invoke his Fifth Amendment rights.  Further, any argument that the Government acted improperly by obtaining a

---

[2] Notably, the argument as to polling the jury was untimely and improperly raised by Defendant for the first time in his reply brief filed almost nine months after the jury verdict in this matter (Doc. 212) and may be considered waived.  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *United States v. Moore*, 376 F.3d 570, 576 (6th Cir. 2004).

Superseding Indictment after Defendant declined to engage in plea negotiations is insufficient to demonstrate prosecutorial vindictiveness.  *See United States v. DeJohn*, 368 F.3d 533, 545 (6th Cir. 2004) ("This circuit has consistently indicated that when the right asserted by the defendant is simply the right to go to trial, an additional charge entered after a failed plea bargain cannot, after [*Bordenkircher v. Hayes*, 434 U.S. 357, 363-65 (1978)], form the substance of a viable vindictive prosecution claim.").[3]

Accordingly, Defendant's Rule 29 motions for acquittal and Rule 33 motions for a new trial on any of the above grounds are overruled.

### E.  Fifth Issue

Defendant's contention regarding his decision as to whether to proceed with a bench versus jury trial is disingenuous.  The Court directly inquired of Defendant on September 25, 2014 whether he wanted to proceed with a bench trial or a jury trial, in response to which Defendant plainly indicated his desire to proceed with the jury trial.  (Doc. 136, PageId 2016).  The specific colloquy is as follows:

> THE COURT:  Okay.  But have you thought about whether or not you want a jury or you want a --
>
> THE DEFENDANT:  I thought about it.  I think a jury, a jury of my peers will work out okay.

(Doc. 136, PageId 2016).  Further, during an in-court status conference held on October 3, 2014 and an omnibus hearing held on October 16, 2014, the Court specifically discussed with Defendant the jury selection process, how *voir dire* is conducted, and the number of strikes and alternate jurors, among other items.  (Doc. 108, PageId 1502, 1509-10, 1516-18, 1524-25; Doc. 114, PageId 1618-25, 1630, 1675-78, 1682-83).

---

[3] It also is noted that defenses, objections or requests concerning vindictive prosecution "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."  Fed. R. Crim. P. 12(b)(3)(A)(iv).

Defendant plainly intended to proceed with a jury trial at that time. Thereafter, on October 27, 2014, Defendant made a request to waive a jury trial and proceed with a bench trial, raising the issue of the Silent Witness Rule. (Doc. 130, PageId 1775-77). At that time, the Court determined that Defendant's last minute request to waive a jury trial was not made knowingly and intelligently. (Id., PageId 1775-77, 1784-85). Therefore, the Court denied his request and the case proceeded to trial before a jury. (Id.).

Based on the foregoing, the Court overrules Defendant's request for a new trial based on the denial of a bench trial.

### F. Sixth Issue

Defendant next contends that the grand jury process was flawed because he filed affidavits of three witnesses, Anshawn Esmond (Doc. 120-1), Brittnie Mansfield (Doc. 147), and Ashlie Mansfield (Docs. 123, 175-6), who he claims produced perjured testimony to the grand jury.

The Court conducted an *in camera* discussion with Anshawn Esmond and Brittnie Mansfield on November 13, 2013. This portion of the record remains sealed pending Sixth Circuit review. At the conclusion of these interviews, the Court concluded that Mr. Esmond's grand jury testimony was consistent with his conversations with the Court and supported the actions taken by that body. Further, Ms. Mansfield's testimony was immaterial to the issuance of the Indictment. Due to the conflicting affidavits, however, the Court also appointed counsel, Lawrence Greger, to represent the two witnesses. (Doc. 169). Mr. Greger indicated that his clients would assert their Fifth

Amendment privilege at trial. Neither was called as a witness at trial, and the jury nonetheless returned a guilty verdict on all counts.

With respect to Ashlie Mansfield, Defendant raises the issue that she did not appear to testify during the proceedings as required concerning her alleged perjury to the grand jury. Defendant, however, already had absconded on November 17, 2014 when Ashlie Mansfield could have been called by Defendant to testify, and he was not present at trial that day. Mr. Anderson therefore was moved from stand-by counsel to trial counsel status. When the Court inquired of Mr. Anderson about the testimony of Ashlie Mansfield, Mr. Anderson indicated that she had been subpoenaed for that day but did not appear. Mr. Anderson further indicated, however, that the issue to be raised with Ashlie Mansfield related to prior *pro se* motions and that she would not be rebutting anything presented in the Government's case in chief. The Court also inquired as to whether he wanted a bench warrant issued to secure her presence, and based upon the foregoing, his response was negative.

At no time was the Government obligated to produce the grand jury transcripts of the witnesses to Defendant as *Jencks* material. 18 U.S.C. § 3500. Further, Defendant has not satisfied his burden under Fed. R. Crim. P. 6(e)(3)(E)(ii) of showing that a particularized and factually based ground may have existed to dismiss the Indictment because of a matter that occurred before the grand jury. Additionally, any defect in the Indictment as a result of the alleged perjured testimony is cured by the jury's guilty verdicts given that the jury was not presented with any of the alleged perjured testimony. *United States v. Combs*, 369 F.3d 925, 936-37 (6th Cir. 2004). As explained

*supra*, there was overwhelming evidence to support the jury's guilty verdicts against Defendant on all 46 counts of the Superseding Indictment.[4]

### G. Seventh Issue

Finally, Defendant argues that certain pretrial motions were not ruled upon prior to trial. Nonetheless, the Court addressed the issues about which he complains. The Court addressed issues raised in Document 97 during the September 25, 2015 hearing. (Doc. 101). Further, the U.S. Attorney's Office indicated it would provide Mr. Anderson *Jencks* materials that related to Special Agent Brad Bierman, Special Agent Mary Beth Turk, and Special Agent O'Neill, and that the Government had previously provided MOIs[5] for all of the victims in the case. The record notes that the documents were placed on Defendant's table. (Doc. 114, PageId 1604). Defendant reiterated his request for suppression of evidence and the Court explained that his motion was previously stricken by Judge Rice. (Doc. 114, PageId 1607-08). The Court granted him an opportunity for additional filings. (Doc. 114, PageId 1609). These filings were made and the Court's Order of November 3, 2014 brought the docket current and overruled Defendant's Motion to Suppress (Doc. 113), Supplemental Motion to Suppress (Doc. 120), and Omnibus Pretrial Motion (Doc. 115).

In any event, Defendant raises this issue as one for a new trial (Doc. 202). Where, as here, such motions are grounded on any reason other than newly discovered evidence, they must be filed within 14 days after the verdict or finding of guilty. Fed. R. Crim. P. 33(b)(2). As Defendant's motion was filed more than seven months after the

---

[4] It is further noted that Defendant's post-trial requests for dismissal or other relief based upon any error in the grand jury proceedings or a defect in the Indictment (*see* Docs. 175, 200, 201) are untimely to the extent they were not made before trial and there is no good cause shown to excuse the delay. Fed. R. Crim. P. 12(b)(3)(A)(v), (b)(3)(B).

[5] MOIs are memoranda of interviews.

verdict in this matter, it is untimely and must be overruled. While Defendant raises in Document 212 an issue of alleged improper contact with a juror or jurors during his absence from trial, as well as an issue of a juror allegedly being acquainted with a government witness, his arguments are completely unsupported by any alleged facts and are unfounded. To the extent he also argues that the jury improperly considered his absence from trial in rendering its verdict, it is noted that the Court specifically instructed the jury not to consider his absence in rendering its verdict. (Doc. 166, PageId 2791). In any event, these issues were untimely and improperly raised by Defendant for the first time in his reply brief filed almost nine months after the jury verdict in this matter (Doc. 212) and may be considered waived. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *United States v. Moore*, 376 F.3d 570, 576 (6th Cir. 2004).

### III. CONCLUSION

For the foregoing reasons, Defendant's various post-trial motions (Docs. 173, 175, 200, 201, 202, 203) are **OVERRULED**, and his post-conviction motion (Doc. 199) is **DISMISSED WITHOUT PREJUDICE**. Further, Defendant's *pro se* Amended Request for Additional Time to File Response/Reply as to Document 207 (Doc. 213) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

                                               s/Michael R. Barrett
                                               Judge Michael R. Barrett
                                               United States District Court